**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **LORI A. HAZEWOOD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 07-0171-WS-B** |
| | ) |
| **FOUNDATION FINANCIAL GROUP,** | ) |
| **LLC,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter is before the Court on defendant Ticor Title Insurance Company's Motion to Dismiss First Amended Complaint (doc. 32); the Motion for More Definite Statement by Defendants Network Closing Services, Inc. and Meridian Title Services, LLC (doc. 34); and the Motion to Dismiss by Defendants Foundation Financial, Network Closing Service, and Meridian Title Services (doc. 35).[1]  The Motions have been briefed and are ripe for disposition.[2]

**I.     Background.**

This action is one of a spate of putative class actions filed in this District Court in recent months seeking to bring federal statutory claims against mortgage lenders, title insurers, and closing agents relating to residential real estate transactions.  In her 10-count, 26-page First Amended Complaint (doc. 30), plaintiff Lori A. Hazewood maintains that defendants failed to

---

[1]     Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

[2]     During briefing on defendants' predecessor Rule 12(b)(6) motions, which were superseded by the filing of the First Amended Complaint, plaintiff filed a Motion for Oral Argument on 12(b)(6) Motions (doc. 31).  That request is echoed in plaintiff's brief on the current motions, which bears the legend "Oral Argument Requested."  (Doc. 39.)  Pursuant to Local Rule 7.3, the Court in its discretion may rule on any motion without oral argument.  After careful consideration of the parties' voluminous briefs, the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the issues presented in the Rule 12(b)(6) Motions.  Accordingly, plaintiff's Motion for Oral Argument (doc. 31) is **denied**.

make certain disclosures and improperly marked up certain charges in connection with the closing of her home refinance loan on April 24, 2006.  Defendants Meridian Title Services, LLC and Network Closing Services ("MTS/NCS") are alleged to have been the settlement agents, while defendant Foundation Financial Group, LLC ("Foundation") is alleged to have been the lender on the transaction and defendant Ticor Title Insurance Company, Inc. ("Ticor") is alleged to have been the provider of the lender's title insurance policy.  (Doc. 30, at ¶¶ 5-8.)  The First Amended Complaint alleges that MTS/NCS was acting as Ticor's agent and pursuant to specific closing instructions from Foundation in the transaction.  (*Id.* at ¶¶ 3-5, 8.)  According to the First Amended Complaint, certain charges on the HUD-1 settlement statement for Hazewood's loan were "marked-up charges," "constituted charges imposed for some reason other than in exchange for services actually rendered," or constituted charges that were "non-bona fide," "unreasonable," "split," or "padded" in some unspecified way.  (*Id.* at ¶ 14(a)-(h).)

Based on these factual allegations, the First Amended Complaint purports to assert the following causes of action: (1) a claim against Foundation for violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") because the required disclosures omitted certain finance charges levied in the transaction (Count I); (2) a claim against MTS/NCS for violating Section 8(b) of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), by imposing unspecified charges that were marked up, imposed for reasons other than in exchange for services rendered, or were non-bona fide, unreasonable, split or padded (Count II); (3) a claim alleging that Ticor violated Section 8(b) of RESPA by giving and/or accepting a portion of a charge made or received for a real estate settlement service other than for services actually performed (Count III); (4) a claim styled as a cause of action for declaratory judgment but requesting monetary relief in the form of "a refund from defendants for any sum charged in excess of the amount approved by the state insurance department" (doc. 30, at 13) (Count IV); (5) a claim for unjust enrichment on the grounds that "defendants charged rates for title insurance which were in excess of the amount approved by the state insurance department" (*id.*) (Count V); (6) a claim for "price discrimination" again alleging that defendants charged Hazewood title insurance rates exceeding the amount approved by the state insurance department (Count VI); (7) a putative class claim against MTS/NCS and Ticor for violation of Section 8(b) of RESPA (Count VII); (8) a putative class claim for declaratory judgment (Count VIII), again

seeking a refund of all sums charged in excess of amounts approved by the state insurance department; (9) a putative class claim for unjust enrichment (Count IX); and (10) a putative class claim for price discrimination (Count X).  The class claims closely parallel the corresponding individual claims.

By way of summary, then, the ten causes of action interposed by Hazewood in the First Amended Complaint cluster neatly into the following discrete categories: (i) a TILA claim against Foundation (Count I); (ii) RESPA claims against MTS/NCS and Ticor alleging violations of Section 8(b) because the title insurance fee was marked up or otherwise improper (Counts II, III, and VII); and (iii) state-law claims seeking recovery of fees charged Hazewood for title insurance that eclipsed the amounts approved by the state insurance department (Counts IV, V, VI, VIII, IX, and X).  Ticor has moved to dismiss all claims against it, and defendants Foundation and MTS and NCS have filed a tagalong motion that seeks dismissal of the same claims on the same grounds as Ticor's motion.  Apparently as an alternative to their Rule 12(b)(6) motion, MTS and NCS have also filed a Rule 12(e) motion for more definite statement, which need be reached only if their Rule 12(b)(6) motion is denied.[3]

## II.    Legal Standard.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  Thus, "all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto."  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed.R.Civ.P.  As the Supreme Court recently observed, while a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

[3]    No motion to dismiss has been filed with respect to the TILA cause of action set forth against Foundation in Count I; therefore, that cause of action will remain in play, irrespective of the outcome of the Rule 12(b) motions on the other nine theories of relief articulated in the First Amended Complaint.

of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65 (2007). The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, a plaintiff must meet only an "exceedingly low" threshold to withstand a Rule 12(b)(6) motion. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).

## III.   Analysis.

### A.   The RESPA Claims.

As noted *supra*, three of plaintiff's causes of action assert violations of Section 8(b) of RESPA, which provides as follows: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). The gravamen of these claims is plaintiff's contention that Ticor and MTS/NCS charged Hazewood more for the lender's title insurance policy than Ticor's filed rate approved by the Alabama Department of Insurance would have allowed, such that this fee was "marked-up," "non-bona fide," "unreasonable," "split," or "padded." (First Amended Complaint, at ¶ 31.) The cause of action is articulated most completely in Count III, wherein Hazewood alleges that "[t]he title insurance charge imposed on Plaintiff for title insurance premium exceeded the maximum allowed premium set by the Alabama Department of Insurance pursuant to Alabama law"; that this charge "was split between the settlement agent and defendant Ticor"; and that Ticor violated Section 8(b) "by giving and/or accepting a portion of a charge made or received for a real estate settlement service other than for services actually performed." (*Id.*, ¶¶ 37-38, 40.)

The undersigned has been afforded multiple opportunities in recent weeks to construe Section 8(b) of RESPA in response to allegations quite similar to those advanced by Hazewood. *See Morrisette v. NovaStar Home Mortgage, Inc.*, 484 F. Supp.2d 1227 (S.D. Ala. 2007); *Williams v. Saxon Mortgage Services, Inc.*, 2007 WL 1845642 (S.D. Ala. June 25, 2007). These decisions state the following principles as to the interpretation of the challenged statute: (a)

Section 8(b) is not a price-control mechanism, but is instead designed to prohibit kickback and referral fee arrangements; (b) Section 8(b) prohibits markups (which occur when a settlement service provider hires a third party to provide a service, adding no value itself to the service, and then passes along to the borrower the third party's charge after tacking on a surcharge), not overcharges (which occur when a settlement provider performs a service itself, then charges an amount for that service that the borrower perceives as unreasonable, excessive or illegal); (c) Section 8(b) neither requires nor permits courts to disaggregate a fee charged by a settlement provider for a given service into an "earned" component (relating to the service actually provided) and an "unearned" component (not relating to the service actually provided), so as to derive a RESPA violation from the excessive piece; and (d) Section 8(b) is not violated when a title insurer receives a higher fee for a lender's title insurance policy than its filed rate authorized by the Alabama Department of Insurance, because that is simply an overcharge for the title insurance services that the title insurer provided, and RESPA does not outlaw overcharges.

In response to defendants' arguments that her Section 8(b) RESPA claims are not cognizable because they allege mere overcharges for title insurance services actually performed, Hazewood acknowledges that the *Morrisette* ruling "indicate[s] that RESPA claims will be dismissed in this action." (Plaintiff's Brief (doc. 39), at 15.) She does not maintain that the facts or claims in this case are distinguishable from those in *Morrisette*, nor does she suggest that the analysis should be any different here.[4] Instead, Hazewood's position is that if *Morrisette* is

_____

[4]    Perhaps such a contention could have been made because Hazewood does not limit her RESPA claims to the title insurance provider (Ticor), as did the plaintiffs in *Morrisette* and *Williams*, but additionally brings RESPA claims against the closing agents (MTS/NCS) based on a purportedly excessive title insurance fee. As plaintiff effectively concedes that the *Morrisette* analysis would apply with equal force to those claims, and at any rate fails to argue that the analysis differs as to MTS and NCS, the Court need not address whether these defendants' status as closing agents, rather than title insurers, would impact the analysis under the principles enunciated in *Morrisette*. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it .... Rather, the onus is upon the parties to formulate arguments."); *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ("the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her"). Even if that issue were considered, however, the First Amended Complaint does not allege sufficient facts under the *Bell*

followed then she cannot prevail on her RESPA claims.  In that regard, Hazewood simply attaches a copy of a brief filed by plaintiff's counsel in *Morrisette* in connection with a motion to reconsider and urges the Court in conclusory terms to "reconsider its interpretation of RESPA for the reasons set forth in the brief" from *Morrisette*, without directing the Court's attention to any particular aspect of that brief or showing how those arguments are persuasive here.  The arguments presented in the *Morrisette* brief (*i.e.*, that the Court's interpretation of RESPA cannot be squared with the statutory language, that it conflicts with HUD guidance, and that it places too much weight on an artificial overcharge/markup distinction) have been rejected by the Court after extensive analysis in both *Morrisette* and *Williams*.  Little purpose would be served by reiterating that reasoning at this time.

Accordingly, in light of Hazewood's acknowledgment that *Morrisette* is fatal to her RESPA claims, and pursuant to the principles set forth in *Morrisette* and *Williams*, the undersigned finds that the Motions to Dismiss are due to be **granted** with respect to the RESPA causes of action, including both individual and class-based claims and including both the claims against Ticor and those against MTS and NCS.

> **B.       The Common-Law Claims.**

In addition to the RESPA causes of action, Hazewood (individually and on behalf of others similarly situated) attempts to parlay the allegedly excessive charge for Ticor's title insurance services into common-law claims against Ticor, MTS and NCS for declaratory judgment, unjust enrichment and price discrimination (Counts IV, V, VI, VIII, IX and X).[5]  With

---

*Atlantic* standard to assert a plausible RESPA claim against MTS and NCS.  Far from alleging that MTS and NCS performed no services concerning the lender's title insurance policy, the First Amended Complaint alleges that they acted as Ticor's agent in connection with the issuance of that policy and that they sold title insurance for Ticor.  (Doc. 30, at 2, 8.)  Thus, by plaintiff's own admission, MTS and NCS did perform services in connection with the title insurance policy at issue.  Their acceptance of an allegedly excessive fee for that service cannot state a viable claim under RESPA.

[5]      Plaintiff's original Complaint (doc. 1) filed on March 6, 2007 was confined to TILA and RESPA causes of action.  All of these common-law claims were pleaded into this lawsuit for the first time via Amended Complaint (doc. 30) filed as of right on April 24, 2007, just five days after the *Morrisette* decision was issued.  This sequence of events strongly suggests that Hazewood pleaded these claims in an attempt to sidestep *Morrisette* and salvage

respect to all of these claims, the First Amended Complaint is unmistakably clear that their factual predicate is that the defendants charged rates for title insurance in excess of those approved by the Alabama Department of Insurance.  In Count IV, for example, plaintiff contends that she "has been legally injured because she was charged more than the filed rate for title insurance," and requests "a refund from defendants for any sum charged in excess of the amount approved by the state insurance department."  (Doc. 30, at 13.)  In Count V, plaintiff argues that she has been unjustly enriched because "[t]he defendants charged rates for title insurance which were in excess of the amount approved by the state insurance department."  (*Id.*)  And in Count VI, Hazewood maintains that defendants engaged in unlawful price discrimination by "charg[ing] rates to the plaintiff for title insurance which were in excess of the amount approved by the state insurance department," while charging other consumers the lawful filed rate.  (Doc. 30, at 14.)[6]  As pleaded, then, plaintiff's common-law causes of action originate exclusively from her contention that Ticor, MTS and NCS charged her a higher fee for title insurance services than the rate approved by the Alabama Department of Insurance.  The complained-of wrong in all of those causes of action is that Hazewood was charged more for title insurance services than the Alabama state insurance department permits.

In Alabama, rates for title insurance premiums are regulated pursuant to the Alabama Title Insurance Act, Ala. Code §§ 27-25-1 *et seq.* (the "Act").  The Act requires every title insurer to file with the Commissioner of the Alabama Department of Insurance (the "Commissioner") its schedule of premium rates, which the Commissioner then approves or disapproves based on considerations of fairness and justness.  "No person, title insurer, agency, or agent shall charge any premium rate for any policy or contract of title insurance except in accordance with the filed premium rates which are in effect for the title insurer as provided in

_____

some basis for suing Ticor, MTS and NCS for excessive charges for title insurance after *Morrisette* slammed the door on any attempt to utilize a RESPA theory to remediate the alleged wrong.

[6]     Counts VIII, IX and X restate the same factual allegations in support of identical causes of action to those set forth in Counts IV, V and VI, with the only difference that Counts VIII, IX and X are class-based claims, while Counts IV, V and VI are brought exclusively in Hazewood's name.

this section." Ala. Code § 27-25-6(a). However, the Act makes clear that non-compliance with this requirement does not give rise to a private right of action. Indeed, the Act states, "This chapter shall be enforceable only by the commissioner and does not create any private cause of action or other private legal recourse." Ala. Code § 27-25-9(b).[7] Where, as here, a plaintiff claims a private right of action based on a violation of a statutory scheme, she "must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *American Auto. Ins. Co. v. McDonald*, 812 So.2d 309, 311 (Ala. 2001). In *Morrisette*, the undersigned held that these principles were fatal to the plaintiffs' attempt to bootstrap claims for negligence and wantonness on a title insurer's charging of a premium in excess of its filed rate. *See Morrisette*, 484 F. Supp.2d at 1231 (opining that the clarity of § 27-25-9(b) negates plaintiffs' ability to show that a private right of action existed for title insurance premiums charged in excess of the approved rate); *see generally American Tel. and Tel. Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 217, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) (citation omitted) ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier."). The dearth of evidence suggesting a legislative intent to allow consumers to sue for excessive title insurance charges under § 27-25-6, and the express statutory language to the contrary, preclude plaintiff's efforts to do that here, irrespective of how she labels her claims.

In attempting to overcome this persuasive reasoning, plaintiff cites a handful of Alabama decisions that she contends have allowed plaintiffs to pursue common-law claims to recover charges in excess of filed rates. None of these authorities involves a common-law claim to recover title insurance premiums in excess of those permitted by § 27-25-6; rather, these cases proceed under different provisions with different statutory frameworks. These differences are substantial and material, rendering all of these authorities readily distinguishable. For example, plaintiff champions *Ex parte Blue Cross and Blue Shield of Alabama*, 582 So.2d 469 (Ala. 1991), for the proposition that "a claim for Declaratory Judgment was the appropriate claim to make when a charge in excess of the filed rate is levied against a consumer." (Plaintiff's Brief,

---

[7]         Enforcement powers conferred upon the Commissioner by the Act include the discretion to revoke a title agent's certificate of authority, revoke a title insurer's license, and impose a fine of $500 per violation (or $5,000 per willful violation). Ala. Code § 27-25-9(c).

-8-

at 5.)  But *Blue Cross* involves a claim brought pursuant to Ala. Code § 10-4-109, which regulates rates for health care service plans and which omits the "no private right of action" language and the Commissioner enforcement mechanism found in § 27-25-9.  A pair of other cases cited by plaintiff, *Emperor Clock Co. v. AT&T Corp.*, 727 So.2d 41 (Ala. 1998) and *Allen v. State Farm Fire and Cas. Co.*, 59 F. Supp.2d 1217 (S.D. Ala. 1999), rejected claims to obtain rates below a service provider's filed rates as being in violation of the filed rate doctrine.  Those cases did not hold that such claims would have passed muster had the plaintiffs alleged that the rate charged exceeded the provider's filed rate, and therefore cannot bolster Hazewood's attempts to bring claims on that basis.

Plaintiff also contends that her common-law claims are sustainable under *Allen v. Delchamps, Inc.*, 624 So.2d 1065 (Ala. 1993), and *Birmingham Hockey Club, Inc. v. National Council on Compensation Ins., Inc.*, 827 So.2d 73 (Ala. 2002).  The Court disagrees.  In *Allen*, the Alabama Supreme Court recognized that a claim of negligence per se was not barred where the plaintiff's theory was that the defendant's violations of the federal Food Drug & Cosmetic Act ("FDCA") constituted negligence per se.  The FDCA does not recognize a private cause of action for civil damages; however, the *Allen* court determined that the violation of the FDCA regulations established a duty of care to support a claim of negligence per se.  Here, by contrast, Hazewood does not bring a claim of negligence per se, nor does she attempt to rely on the Alabama Title Insurance Act to create a duty of care; instead, she sues defendants under common-law theories of declaratory judgment, unjust enrichment and price discrimination for violation of that Act.  The Alabama Supreme Court's decision in *Allen* does not entitle her to do so, inasmuch as it is rooted firmly in peculiarities of the negligence per se doctrine, which is inapplicable here.  Meanwhile, in *Birmingham Hockey*, the plaintiff maintained that a defendant had charged higher workers' compensation insurance premiums than its filed rate permitted. The Alabama Supreme Court found that this claim was "cognizable in the first instance in the circuit court and that a party bringing such a claim is not required to first seek an administrative hearing."  *Birmingham Hockey*, 827 So.2d at 83.  But the Alabama Workers' Compensation Act, much like the statutory scheme at issue in *Blue Cross*, has no provision disclaiming any private right of action or private legal recourse for violation of same.  *See* Ala. Code § 25-5-8(f)(2). Thus, *Birmingham Hockey*, like *Blue Cross*, is readily distinguishable because it does not

involve a statutory scheme in which the Alabama legislature specifically directed that the statute "shall be enforceable only by the commissioner and does not create any private cause of action or other private legal recourse."  Ala. Code § 27-25-9(b).

After all the ink has been spilled and the clamor has abated, the legal issue presented here is quite straightforward.  Hazewood brings a batch of common-law claims for declaratory judgment, unjust enrichment, and price discrimination, all predicated exclusively on the fact that defendants charged her a higher title insurance premium than had been approved by the Alabama Commissioner of Insurance.  An Alabama statute sets forth baseline requirements that title insurers file proposed rates with the Commissioner for approval, and forbids title insurers from charging rates higher than those filed with and approved by the Commissioner.  The unambiguous thrust of all six of Hazewood's common-law claims is that defendants violated that statutory requirement by charging excessive rates.  But the Alabama Title Insurance Act on its face contains an unequivocal expression of legislative intent that no private cause of action of right of private legal recourse was created by this statute and that title insurance premiums in excess of approved rates may be policed only by the Commissioner.  *See* Ala. Code § 27-25-9(b).  This language negates any legislative intent to impose civil liability for a violation of the statute, and forbids any plaintiff from suing a title insurer or closing agent for charging fees higher than those permitted by the Act.  Plaintiff's claims are based solely on alleged violations of the Act.  Even if Hazewood had attempted to do so (which she has not), she cannot credibly assert that her claims exist independently of the Act, inasmuch as the only wrongdoing plaintiff ascribes to defendants is their act of charging her a premium above their rate filed and approved under the Act.  Thus, these common-law claims are inextricably intertwined with, and functionally identical to, claims under the Act.  The legislative ban on private legal recourse for violations of the Act is therefore fatal to plaintiff's attempt to mutate those violations into common-law theories for relief, and plaintiff has not cited a single authority that would enable her to overcome that prohibition to assert claims for declaratory judgment, unjust enrichment and price discrimination predicated on violations of the Act.[8]

---

[8]      Alternatively, plaintiff's common-law claims for "price discrimination" (Counts VI, X) fail to state a claim upon which relief can be granted because they proceed on a novel

For all of these reasons, the Court finds that the Motions to Dismiss are due to be **granted** with respect to Counts IV, V, VI, VIII, IX and X because no private right of action exists for the wrong alleged to have been committed by defendants.[9]

---

theory that has apparently never been recognized by Alabama courts.  As the Court understands it, plaintiff claims that Alabama law would allow her to sue for "price discrimination" because she was charged a higher rate than Ticor's filed rate, while other consumers were charged less.  She has failed to cite a single Alabama authority for this proposition, but relies exclusively on an Eighth Circuit case from 1918 dealing with electricity rates in Iowa, and a 1994 Supreme Court case relating to the federal Interstate Commerce Act.  This Court is not empowered to cut from whole cloth a new Alabama tort based on such fragmentary and unrelated federal precedent.  *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1542 (11th Cir. 1988) ("Generally, states may decide what is or is not tortious within their boundaries."); *Beasley v. Fairchild Hiller Corp.*, 401 F.2d 593, 596 (5th Cir. 1968) ("federal courts do not make state law"); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 52 (3rd Cir. 1985) ("the existence of tort remedies is a matter of state law"); *Blackmon v. American Home Products Corp.*, 346 F. Supp.2d 907, 919 (S.D. Tex. 2004) ("It is not the province of this Court to expand Texas tort law beyond the limits articulated by the Texas legislature and the Texas courts."); *Zombori v. Digital Equipment Corp.*, 878 F. Supp. 207, 210 (N.D. Fla. 1995) ("Federal courts are entrusted to apply state law, not make it.").  Therefore, even if Counts VI and X were not foreclosed by operation of § 27-25-9(b), dismissal would remain appropriate under Rule 12(b)(6) because they effectively ask this Court to recognize a brand-new Alabama tort.

[9]    In so holding, the Court specifically declines to adopt defendants' alternative argument that the "filed rate doctrine" forecloses these causes of action.  To the contrary, the Court agrees with plaintiff that the filed rate doctrine cannot properly be applied to bar her claims.  This doctrine would undoubtedly foreclose plaintiff from suing Ticor to enforce a rate lower or otherwise different than that on file with the Commissioner.  *See, e.g., Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1316-17 (11th Cir. 2004) (filed rate doctrine bars challenges that "would have the effect of changing the filed tariff" or would "result in a judicial determination of the reasonableness of that rate"); *Taffet v. Southern Co.*, 967 F.2d 1483, 1488 (11th Cir. 1992) ("federal courts have applied the filed rate doctrine in a variety of contexts to bar recovery by those who claim injury by virtue of having paid a filed rate" and describing as "central to the filed rate doctrine" the principle that a plaintiff "can claim no rate as legal right that is other than the filed rate"); *Allen*, 59 F. Supp.2d at 1227 ("The filed-rate doctrine prohibits collateral challenges to rates set by a regulatory agency ...."); *Emperor Clock*, 727 So.2d at 42 ("Under the filed-rate doctrine, a consumer of the regulated service is conclusively presumed to have notice of the contents of the tariff and ***may not claim that it is entitled to any rate other than the rate contained in the tariff***.") (emphasis added).  Thus, if plaintiff were challenging the validity or reasonableness of Ticor's filed rate with the Commissioner, or if she were claiming that she should be permitted to pay some rate other than that filed rate, then her claims would be foreclosed by straightforward application of the filed rate doctrine.  But that is not the basis for

-11-

**IV.    Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.    Ticor Title Insurance Company's Motion to Dismiss First Amended Complaint
      (doc. 32) and the Motion to Dismiss by Defendants Foundation Financial,
      Network Closing Service, and Meridian Title Services (doc. 35) are **granted**.
      The RESPA causes of action (Counts II, III, and VII) are **dismissed** for failure to
      state a claim upon which relief can be granted pursuant to *Morrisette* and
      *Williams*.  The state common-law claims (Counts IV, V, VI, VIII, IX, and X) are
      **dismissed** for failure to state a claim by operation of Ala. Code § 27-25-9(b).  The
      Clerk of Court is directed to terminate defendants Ticor Title Insurance Company,
      Inc., Meridian Title Services, LLC, and Network Closing Services, Inc. as parties
      to this action.

2.    The Motion for More Definite Statement by Defendants Network Closing
      Services, Inc. and Meridian Title Services, LLC (doc. 34) is **moot** because the
      causes of action to which that Rule 12(e) Motion relates have been dismissed.

3.    Plaintiff's Motion to Initially Address Defendant's Principal Authorities of
      *Blockbuster, Inc. v. White* and *C.B. v. Bobo* (doc. 42) is **denied** for the following
      reasons: (1) it is entirely proper for a movant to cite rebuttal authority in a reply
      brief addressing arguments raised in the non-movant's response brief; (2) plaintiff
      did not attach to her Motion any proposed sur-reply or otherwise provide any
      indication of how she would "address" *Blockbuster* and *Bobo* if given leave to do
      so; and (3) this Court did not rely on *Blockbuster* or *Bobo* in deciding the instant

---

her lawsuit.  None of the authorities cited by defendants can reasonably be read as supporting the
proposition that the filed rate doctrine bars a plaintiff from seeking to enforce the actual rate filed
with the Commissioner (which is what Hazewood does here), as opposed to some higher rate
that the defendant charged her.  For example, the *Taffet* decision on which defendants rely
heavily states merely that the filed rate doctrine forbids a plaintiff from challenging an approved
rate as having been obtained by fraud.  *See Taffet*, 967 F.2d at 1485, 1494-95.  *Taffet* is not a
case in which the plaintiffs sought redress for paying a rate higher than the filed rate (as does
Hazewood here), but rather is one in which the plaintiffs sought to undermine the filed rate itself
(which Hazewood decidedly does not do).  Accordingly, the filed rate doctrine is inapposite and
has no preclusive effect on Hazewood's claims.

Rule 12(b)(6) motions, in any event.

4.    Plaintiff's request for oral argument (doc. 31) is **denied**.

5.    This action will proceed as between Hazewood and defendant Foundation Financial Group, LLC on Count I (violation of TILA).  Foundation is **ordered** to file its answer on or before **July 16, 2007**.

DONE and ORDERED this 2nd day of July, 2007.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE